IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CARL'S JR. RESTAURANTS LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:18-cv-01357 |
| MARGARET KARCHER LEVECKE ENTERPRISES, LLC and MARGARET KARCHER LEVECKE, | ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Default Judgment (Doc. No. 37). Defendants have not filed a response. For the reasons discussed below, Plaintiff's Motion (Doc. No. 37) is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL ALLEGATIONS

Plaintiff Carl's Jr. Restaurants LLC ("Carl's Jr.") is a Delaware limited liability company with its principal place of business in Franklin, Tennessee. (Doc. No. 1 ¶ 1). Defendant Margaret Karcher LeVecke Enterprises, LLC ("MKLE") is an Arizona limited liability company with its principal place of business in Tempe, Arizona. (*Id*. at ¶ 3). Defendant Margaret Karcher LeVecke ("LeVecke") is a citizen and resident of California. (*Id*. at ¶ 4). Plaintiff owns the rights to numerous federally registered trade and service marks for use in connection with the ownership and operation of its franchised quick-service restaurants, including the "Carl's Jr." service mark and the Carl's Jr. Happy Star logo, among others ("CARL'S JR. Marks"). (*Id*. at ¶¶ 8-11). Plaintiff has the exclusive right to operate and license others to operate quick-service restaurants under the Carl's Jr. Brand. (*Id*. at ¶¶ 8-13).

In August of 2013, Plaintiff entered into twelve franchise agreements with Defendant MKLE governing the operation of twelve Carl's Jr. quick-service restaurants at specified locations in Arizona. (*Id*. at ¶¶ 15-16). Pursuant to the Franchise Agreements, Plaintiff licensed Defendant MKLE the right to use CARL'S JR. Marks in connection with the operation of its twelve franchised quick-service restaurants. (Doc. No. 1-1, PageID # 27). Concurrently with each of the twelve Franchise Agreements, Defendant LeVecke executed a Guarantee and Assumption of Franchisee's Obligations ("Franchise Guarantees"), personally guaranteeing all of MKLE's obligations under the Franchise Agreements, including the obligation to timely remit all payments due Plaintiff under the Agreements, and taking on personal liability in the event of MKLE's breach. (Doc. No. 1 ¶ 17).

Beginning in the fall of 2015, Defendant MKLE became delinquent in the payment of royalties and advertising fees it owed to Plaintiff under the terms of the Franchise Agreements. (*Id*. at ¶ 21). Beginning in February 2016, Plaintiff tried to work out arrangements for repayment with Defendant MKLE, but by November 2016 Defendant MKLE had failed to pay past due amounts in full and had fallen further into arrears on current fee payments. (*Id*. at ¶ 22). On August 30, 2018, Plaintiff sent Defendants a Notice of Default, notifying them that they were in default under the Franchise Agreements for failing to pay the past-due amount of $959,048.95 owed to Plaintiff as of August 6, 2018. (*Id*. at ¶ 23). The Notice of Default afforded Defendants ten days after receipt of the Notice to pay the past-due amount. (*Id*.). Defendants failed to cure their monetary default within ten days of receiving the Notice of Default or at any time thereafter. (*Id*. at ¶ 24).

On September 17, 2018, Plaintiff sent Defendants a Notice of Termination, notifying them that the Franchise Agreements terminated effective September 10, 2018, as a result of Defendants'

failure to cure their defaults identified in the Notice of Default. (*Id*. at ¶ 25). In the Notice of Termination, Plaintiff granted Defendant MKLE a temporary license (the "Temporary License") to continue operating the restaurants as CARL'S JR. restaurants under the obligations of the terminated Franchise Agreements until October 15, 2018. (*Id*.). Plaintiff granted the Temporary License to afford Defendants time to renegotiate lease terms or sell certain Restaurants to Plaintiff's other franchisees to create sufficient financial stability for Defendants to pay some of the balance owed. (*Id*. at ¶ 26). Plaintiff extended the Temporary License twice, once through November 15, 2018 and again through November 30, 2018, but Defendants failed to satisfy the terms of the Temporary License. (Doc. No. 1 ¶¶ 27-28). On November 26, 2018, Plaintiff notified Defendants that it would not agree to extend the Temporary License past November 30, 2018, and that the Temporary License would terminate as of that date. (*Id*. at ¶ 29).

Defendants failed to comply with their post-termination contractual obligations and continued to use the CARL'S JR. Marks after the termination of the Franchise Agreements and the Temporary License. (*Id*. at ¶¶ 30-35).

## II. PROCEDURAL BACKGROUND

Plaintiff filed this action against Defendants on December 7, 2018, seeking a declaratory judgment and asserting claims of federal trademark infringement and unfair competition under the Lanham Act, breach of contract, and common law service mark infringement. (Doc. No. 1). The Complaint seeks damages in an amount not less than $959,048.95, plus interest; attorney's fees and costs, and preliminary and permanent injunctive relief. (*Id*.). Defendant MKLE was served with process on December 13, 2018 (Doc. No. 18), and Defendant LeVecke was served with process on December 21, 2018 (Doc. No. 17). Defendants have failed to file a timely response to Plaintiff's Complaint or otherwise appear in this action.

On September 19, 2019, the Clerk of Court entered an Entry of Default against Defendants for failure to appear or otherwise respond to Plaintiff's Complaint. (Doc. No. 36). On November 18, 2019, Plaintiff filed the pending Motion for Default Judgment (Doc. No. 37). No response has been filed to the pending Motion.

### III. STANDARD OF REVIEW

Rule 55(b)(2) does not set forth a standard to be applied in determining when a party is entitled to a judgment by default. The decision to enter a default judgment under Rule 55(b)(2) lies in the district court's sound discretion. *See Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 756 (E.D. Mich. 2014); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2685 (4th ed.) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right…"). In determining whether to enter a default judgment, courts typically consider factors such as:

> the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or are in doubt; how harsh the effect of a default judgment may be; whether the default was caused by a good-faith mistake or excusable neglect; and whether the plaintiff has engaged in a course of delay.

10A Wright et al. at § 2685. Once default has been entered, the defaulting party is deemed to have admitted all of the well pleaded factual allegations in the complaint concerning liability. *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's theories of liability. *Zinganything, LLC*, 158 F. Supp. 3d at 670.

Additionally, because the allegations in the complaint pertaining to the amount of damages are not accepted as true, the district court must undertake an inquiry "to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). It is the plaintiff's burden to establish the amount of damages it is entitled to recover from the party who is in default. *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)).

## IV. ANALYSIS

In light of the record as a whole, and based on the factors identified above, the Court finds that the relevant factors weigh, in principle, in favor of default judgment. The Court must still consider, however, whether the factual allegations of the Complaint support relief under the Plaintiff's claims: (1) declaratory judgment, (2) federal trademark infringement and unfair competition under the Lanham Act, (3) breach of contract, and (4) common law service mark infringement.

**A. Default Judgment - Liability**

This Court has subject matter jurisdiction over Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. (*See* Doc. Nos. 29, 30).

   1. <u>Declaratory Judgment (Count One)</u>

Plaintiff's motion for default judgment does not address its claim for declaratory judgment (*See* Doc. Nos. 37-38). Therefore, the Court will not grant default judgment on this claim.

2. <u>Lanham Act: Trademark Infringement and Unfair Competition (Counts Two and Three)</u>

To establish liability for trademark infringement under 15 U.S.C. § 1114(a), a party must show: (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (citations omitted). The Sixth Circuit considers claims for unfair competition under 15 U.S.C. § 1125(a) using the same test for trademark infringement claims under 15 U.S.C. § 1114. *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017). The likelihood of confusion is the essence of the claims. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006).

The Complaint adequately pleads Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act. Plaintiff owns the rights to the trademarks and service marks at issue and licensed those marks to Defendant MKLE. (Doc. No. 1 ¶¶ 8-16; Doc. No. 1-1, PageID # 27). Plaintiff alleges that Defendants' restaurants continued to make use of Plaintiff's marks after the termination of their Franchise Agreements. (Doc. No.1 at ¶¶ 34-35). It is well settled that in cases where, as here, the infringer is a holdover franchisee, the "unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'" *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997). Accepting as true the well-pleaded factual allegations in the Complaint, Plaintiff has alleged facts that support its claims under 15 U.S.C. § 1114(a) for trademark infringement and under 15 U.S.C. § 1125(a) and unfair competition, for which a default judgment should enter.

3. Breach of Contract (Counts Four and Five)

Plaintiff's claims for breach of contract arise under the Franchise Agreements. (*See* Doc. No. 1). The Franchise Agreements are governed by California state law. (Doc. No. 1-1 at § 27).[1] To establish a breach of contract claim under California law, a plaintiff must proof: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011).

The Complaint adequately pleads this claim. It alleges the existence and execution of the Franchise Agreements, and the payment terms required thereunder. (Doc. No. 1 ¶¶ 15-20). The Complaint also alleges Defendants' breach of the agreements and Plaintiff's performance of its obligations. (Doc. No. 1 ¶¶ 21-33). Finally, the Complaint alleges Plaintiff has been harmed by Defendants' breach in an amount no less than $959,048.95. (Doc. No. 1 ¶ 60). Accepting as true the well-pleaded factual allegations in the Complaint, Plaintiff has alleged facts that support its claims for breach of contract under California law, for which a default judgment should enter.

4. Common Law Service Mark Infringement (Count Six)

The Complaint does not invoke a particular state's common law regarding the claim for common law service mark infringement. (*See* Doc. No. 1). Plaintiff's motion for default judgment is also silent as to the legal basis for this claim. As neither the Complaint nor Plaintiff's motion for default judgment identify the specific legal basis or requisite elements for this claim, the Court is unable determine whether the factual allegations of the Complaint support relief for such a claim. Accordingly, the Court will not grant default judgment on this claim.

---

[1] The Complaint alleges that all twelve Franchise Agreements "are identical in their material terms." (Doc. No. 1 ¶¶ 15-17).

**B. Default Judgment - Relief**

    1. <u>Injunctive Relief</u>

As part of its requested relief for Defendants' violations of the Lanham Act, Plaintiff seeks an order permanently enjoining any further use of the CARL's JR. Marks by Defendants. (*See* Doc. No. 38 at 10). The Lanham Act permits permanent injunctions to prevent future violations of the Act. *See* 15 U.S.C. § 1116. A plaintiff who seeks a permanent injunction must demonstrate: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that considering the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that it is in the public's interest to issue such an injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 549-50 (6th Cir. 2006). However, "[t]he law of this Circuit holds that no particular finding of likelihood of ... irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757–58 (E.D. Mich. 2014) (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir.1999)). The Sixth Circuit explained that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id*.

In the present case, the Court finds that Plaintiff has suffered an irreparable injury: there is a likelihood of confusion. Regarding the second factor, Plaintiff has asserted facts in its Complaint sufficient to show that Defendants' unlawful continued use of Plaintiff's Marks is causing and will continue to cause irreparable harm and that there is no adequate remedy at law. *See Audi*, 469 F.3d at 550. Further, as to the third factor, the Court finds that a permanent injunction would cause no harm to Defendants, as it would merely require them to comply with federal law. Without a permanent injunction, Plaintiff faces hardship from consumer confusion and possible loss of reputation. Finally, preventing consumer confusion is in the public's interest. *See id*. (finding it

was in the public's interest to issue an injunction to "prevent the consumers from being confused"). Accordingly, the Court finds that Plaintiff is entitled to a permanent injunction enjoining any further use of the CARL's JR. Marks by Defendants.

2. Damages

Plaintiff requests an award of damages in the amount of $959,048.95 for its breach of contract claims. (Doc. No. 38 at 9). Plaintiff relies its Complaint as support for the requested amount of damages:

> The Notice of Default and Notice of Termination filed concurrently with the Complaint establish the basis for the $959,048.95 past-due amount. ECF Nos. 1–3 & 1–4. Moreover, that was the amount demanded in the Complaint. Compl. ¶¶ 23, 60, ECF No. 1. Given Defendants' admission by default of the amount owed, judgment should be entered on Counts Four and Five for $959,048.95.

(Doc. No. 38 at 9). However, even when the plaintiff is entitled to default judgment based on a party's failure to defend, the allegations in the complaint pertaining to the amount of damages are not accepted as true. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009); *Disney Enterprises v. Farmer*, 427 F. Supp. 2d 807, 818 (E.D. Tenn. 2006) ("Only allegations in the complaint concerning the amount of damages are not controlling in a default judgment."). While Plaintiff has specified the amounts owing under the terms of the parties' Franchise Agreements (*see* Doc. Nos. 1-3 and 1-4 ("$466,242.50 in marketing and advertising fees, $313,325.61 in royalty fees, $4,588.94 in HED invoices, $2,280 in miscellaneous charges (for example, gift card charges and star learning charges), and $172,611.90 in finance charges.")), Plaintiff has not filed affidavits or any other supporting evidence showing or explaining how each of those specified amounts were calculated. As such, Plaintiff has provided insufficient evidence to support an award of damages in the amount of $959,048.95. Accordingly, the Court will not grant damages at this

juncture. Plaintiff must file evidentiary support for its claimed damages on or before March 18, 2020. The Court will enter a final order based on Plaintiff's support for its claimed damages.

3. Attorney's Fees and Expenses

Plaintiff seeks attorney's fees in the amount of $31,903.00 and costs and expenses in the amount of $1,544.91, arguing that, as the prevailing party, it is entitled to recover its attorney's fees and costs under the Franchise Agreements. (*See* Doc. No. 38 at 12-15). [2]

Under the Franchise Agreements, the prevailing party in an action brought to enforce the Franchise Agreements is entitled to reimbursement of their costs and expenses, including reasonable attorneys' fees. (*See* Doc. No. 1-1 at § 27). Here, by default, Plaintiff is the prevailing party on its breach of contract claims making the award of attorneys' fees and costs appropriate under the Franchise Agreements. Plaintiff's attorneys have submitted affidavits and invoices providing the Court with a detailed accounting of hours billed and litigation fees. (*See* Doc. Nos. 38-2 and 38-3). The Court has reviewed the same and finds the amounts and time billed to be reasonable. Accordingly, Plaintiff, as the prevailing party, will be awarded attorney's fees in the amount of $31,903.00 and costs and expenses in the amount of $1,544.91 against Defendants, pursuant to the Franchise Agreements. (Doc. No. 1-1 at § 27).

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Default Judgement (Doc. No. 37) is **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff asserts it "would still be entitled to its attorneys' fees under 15 U.S.C. § 1117(a)" even if it weren't entitled to recover its fees and costs under the Franchise Agreements. (Doc. No. 38 at 12). The Court does not reach the application of 15 U.S.C. § 1117(a), given that Plaintiff is entitled to recover its attorneys' fees under the terms of the Franchise Agreements.